UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
BILLY DIXON,                                                       :
                                                                   :
                          Plaintiff,                               :
                                                                   :         21 Civ. 10 (JPC)
            -v-                                                    :
                                                                   :         OPINION AND
                                                                   :           ORDER
WELLS FARGO BANK, N.A.,                                            :
                                                                   :
                          Defendant.                               :
                                                                   :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Plaintiff Billy Dixon sued Defendant Wells Fargo Bank, N.A in New York state court for allegedly fraudulently closing his bank accounts. After Wells Fargo removed the case to this Court, it moved to compel arbitration or, in the alternative, to dismiss the case under Federal Rule of Civil Procedure 12(b)(6). Because Dixon and Wells Fargo entered into an arbitration agreement that includes Dixon's claims, the Court grants the motion to compel, stays the claims against Wells Fargo pending arbitration, and denies as moot Wells Fargo's motion to dismiss.

**I. Background**

**A. Factual Overview[1]**

In December 2013, Dixon opened a checking account and savings account with Wells Fargo. Dkt. 22 ("Cook Declaration") ¶¶ 4-5, Exh. A at 1-3; *see also* Dkt. 6, Exh. 2 ("Complaint")

---

[1] "Courts deciding motions to compel apply a standard similar to the one applicable to a motion for summary judgment." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 281 n.1 (2d Cir. 2019). "On a motion for summary judgment, the court considers all relevant, admissible evidence submitted by the parties and contained in the pleadings, depositions, answers to interrogatories, admissions and affidavits, and draws all reasonable inferences in favor of the non-moving party." *Id.*

¶ 5.  To open both accounts, Dixon had to present his identification to Wells Fargo employees and review and sign the Consumer Account Application.  Cook Decl. ¶¶ 6-7, Exh. A.  The Consumer Account Application included Dixon's signature acknowledging that he had "**received a copy of the applicable account agreement [and] the privacy policy . . . and agree[d] to be bound by their terms.**"  *Id.*, Exh. A at 2 (emphasis in original).  He also recognized that "**[u]nder the dispute resolution program, our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.**"  *Id.* (emphasis in original).  The accompanying account agreement detailed the agreed-on dispute resolution program:

> If you have a dispute with the Bank, and you are not able to resolve the dispute informally, you and the Bank agree that upon demand by either you or the Bank, the dispute will be resolved through the arbitration process as set forth in this part. A "dispute" is any unresolved disagreement between you and the Bank.  It includes any disagreement relating in any way to *services*, accounts or matters; to your use of any of the Bank's banking locations or facilities; or to any means you may use to access your account(s).  It includes claims based on broken promises or contracts, torts, or other wrongful actions.  It also includes statutory, common law, and equitable claims.
>
> "Disputes" include disagreements about the meaning, application or enforceability of this arbitration agreement.  This arbitration agreement shall survive any termination of your account(s).  **YOU AGREE THAT YOU AND THE BANK ARE WAIVING THE RIGHT TO A JURY TRIAL OR TRIAL BEFORE A JUDGE IN A PUBLIC COURT.**
>
> As the sole exception to this arbitration agreement, you and the Bank retain the right to pursue in small claims court any dispute that is within that court's jurisdiction. . . .
>
> \* \* \*
>
> Each arbitration . . . shall be administered . . . according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes ("AAA Rules").

*Id.*, Exh. B ("Consumer Account Agreement") at 4 (emphases in original).

Soon after Dixon opened both accounts, Wells Fargo closed them and mailed Dixon a check for outstanding balances. *See* Complaint ¶ 6; Cook Declaration ¶¶ 12-14. Wells Fargo claims it closed the accounts because of suspected fraudulent activity based on information from Early Warning Services, LLC ("EWS"). Cook Declaration ¶ 12; *see* Complaint ¶ 6. Six-and-a-half years later, Wells Fargo sent Dixon another check for $150. Cook Declaration ¶ 15; Complaint ¶ 8. The parties dispute why Wells Fargo sent this check. Cook claims Wells Fargo sent the check because Wells Fargo "admit[ted] . . . that [it] wrongfully closed [Dixon]'s account." Complaint ¶ 8. Wells Fargo, in contrast, contends that it mailed the check "to compensate [Dixon] for any temporary loss of access to funds that he may have experienced during the restraint that Wells Fargo placed on the Accounts based on the information it had received from EWS." Cook Declaration ¶ 15. Wells Fargo also claims that it "did not admit to any misconduct with respect to its decision to impose the restraint on and then close the Accounts." *Id.*

**B.  Procedural History**

Dixon commenced this action on November 19, 2020, bringing four claims that all related to Wells Fargo allegedly fraudulently closing his account. Complaint ¶¶ 19-41. First, he claims that Wells Fargo violated New York's consumer protection statute by "wrongfully closing accounts without reason." *Id.* ¶ 21. Second, he claims that Wells Fargo committed conversion by "cut[ting] off [Dixon]'s access to his money when it closed the account." *Id.* ¶ 26. Third, Dixon claims that Wells Fargo committed fraud by falsely saying why it closed his accounts. *Id.* ¶¶ 31-34. Fourth, Dixon claims that Wells Fargo committed consumer fraud by having a "misleading practice related to the closure of [his] account and withholding his money from him." *Id.* ¶ 39.

Wells Fargo removed the case to this Court on January 4, 2021.  Dkt. 1.  Two months later, Wells Fargo moved to compel arbitration or, in the alternative, to dismiss the case.  Dkt. 21, 23 ("Motion").  Dixon opposes the motion.  Dkt. 25 ("Opposition").

## II.  Applicable Legal Standards

### A.  Dixon's *Pro Se* Status

Dixon is proceeding *pro se* in this action.  The Court therefore construes his submissions liberally and interprets them "to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quotations omitted).

### B.  Arbitrability

Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The FAA embodies a national policy favoring arbitration founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, their disputes."  *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 250 (2d Cir. 2019) (quotations and alterations omitted).  Because the FAA "intended to place arbitration agreements upon the same footing as other contracts," arbitration remains "a creature of contract."  *Id*. (quotations and alterations omitted).

Before compelling arbitration, this Court must perform a two-step inquiry that looks at contract law principles "governed by state rather than federal law."  *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003).  Here, that means looking to New York state contract law principles.  *See* Cook Declaration ¶ 5; Consumer Account Agreement at 38 (providing that the account is governed, when applicable, by "the laws of the state in which the office of the Bank that maintains your account is located"); *see also* Opposition at 8.  At step one,

the Court looks to see whether "the parties enter[ed] into a contractually valid arbitration agreement." *Nackel*, 346 F.3d at 365. At step two, the Court first asks "whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate." *Convergen Energy LLC v. Brooks*, No. 20 Civ. 3746 (LJL), 2020 WL 5549039, at *13 (S.D.N.Y. Sept. 16, 2020). "[I]f the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). But if it does not, then the Court must determine whether "the parties' dispute fall[s] within the scope of the arbitration agreement." *Nackel*, 346 F.3d at 365.

### III.  Discussion

Wells Fargo argues that, by signing the Consumer Account Application, Dixon agreed to arbitrate all his claims. For the reasons below, the Court agrees that Dixon agreed to the arbitration provisions in those documents, which encompass all of Dixon's claims.

**A.  Whether the Parties Entered into a Valid Arbitration Agreement**

The party moving to compel arbitration has the initial burden of showing that the parties agreed to arbitrate. *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (citing *Almacenes Fernandez, S. A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir. 1945)). While parties can agree to arbitrate questions about a contract's enforceability and scope, they cannot agree to arbitrate "threshold questions concerning contract formation." *Alemayehu*, 934 F.3d at 251 (emphasis omitted) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010)). Thus, "[t]o satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce." *Granite Rock*, 561 U.S. at 297.

Dixon does not dispute that he signed the Consumer Account Application that required arbitration of disputes and that further incorporated the arbitration provision of the Consumer Account Agreement. *See* Opposition at 4-6. He instead contends that the contract is "unenforceable" because of "fraud or unconscionability." *Id.* at 5. He claims that he "would never have signed an agreement to open two accounts with [the] bank" had he known that Wells Fargo "violat[ed] banking laws and regulations" by "closing accounts without first taking steps to determine if fraud exists." *Id.* at 4. In other words, Dixon argues that the contract he signed is voidable.

But the FAA does not permit judicial review of such challenges. "[C]hallenges to a contract containing an arbitration clause fall into two categories: those that challenge the contract as a whole, and those that challenge the arbitration clause in particular." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 61 (2d Cir. 2012). When a party challenges the "arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). But the FAA does not permit the Court to review "challenges [to] the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* at 444. Instead, the arbitrator must decide these claims. *Ipcon*, 698 F.3d at 61. With that said, "a limited exception to the requirement of arbitration for general contract challenges may be available whe[n] a party questions whether a contract was ever made." *Id.* (quotations and alterations omitted).

Here, Dixon challenges the validity of the contract as "unenforceable" because of "fraud or unconscionability," Opposition at 5, not the specific arbitration provisions. "An unconscionable

6

contract is usually voidable since a party to a contract has the power to validate, ratify or avoid it . . . ." *Lawrence v. Miller*, 901 N.E. 2d 1268, 1272 n.3 (N.Y. 2008).  Claims going to whether a contract is voidable do not, however, go to whether the parties ever formed the contract.  *See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 31 (2d Cir. 2001) ("[A] voidable contract is an agreement that unless rescinded imposes on the parties the same obligations as if it were not voidable." (quotations and alterations omitted)).  And Dixon does not contend that he never formed a contract with Wells Fargo.

Nor does Dixon's fraud claim go to contract formation.  Dixon's claim that Wells Fargo "induce[d] [him] to enter into [the] contract" by withholding information about Wells Fargo's policies, Opposition at 6, "is a quintessential example of" fraud in the inducement, *Ipcon*, 698 F.3d at 62.  But here too, the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Buckeye*, 546 U.S. at 445.  Dixon's challenges thus both fail as a matter of law; the Court cannot review them.

## B. Whether the Dispute Falls Within the Scope of the Arbitration Agreement

The Court turns next to whether the dispute falls within the arbitration clause's scope.  To begin with, Wells Fargo has waived its argument that the parties agreed to arbitrate arbitrability by not raising it in its papers.  *See* Motion; Dkt. 26 (reply brief); *Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am.*, 440 F.3d 809, 813 (6th Cir. 2006) (recognizing that party "waived the issue of who had the power to decide . . . arbitrability" by not raising it before the district court); *Rosen v. Genesis Healthcare, LLC*, No. 20 Civ. 1059 (PB), 2021 WL 411540, at *3 n.2 (D.N.H. Feb. 5, 2021) (recognizing that a party may waive the right to arbitrate arbitrability); *see also Cornelius v. Wells Fargo Bank, N.A.*, No. 19 Civ. 11043 (LJL), 2020 WL 1809324, at *5 (S.D.N.Y. Apr. 8, 2020) (interpreting whether "claims fall within the scope of the arbitration

agreement" without addressing arbitrating arbitrability).  The Court therefore will determine whether the dispute falls within the Consumer Account Agreement's scope.

To determine whether an arbitration agreement includes the plaintiff's claims, the Court "analyze[s] the factual allegations made in the plaintiff's complaint."  *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 395 (2d Cir. 2015).  "If the allegations underlying the claims touch matters covered by the parties' agreements, then those claims must be arbitrated."  *Id.* (quotations and alterations omitted).  So when "the agreement is a broad one, . . . the court must compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (quotations omitted), *cert. denied*, 533 U.S. 911 (2001).

Here, the arbitration clause provides that "*any* unresolved disagreement between [Dixon] and the Bank" "will be resolved through the arbitration process."  Consumer Account Agreement at 4 (emphasis added).  It specifies that this "includes *any* disagreement *relating in any way* to *services*, accounts or matters; . . . . claims based on broken promises or contracts, torts, or other wrongful actions[;] [and] . . . statutory, common law, and equitable claims."  *Id.* (first and second emphases added).  "[A]ny unresolved disagreement" that "relat[es] in any way to *services*, accounts, or matters" is classically broad language that covers the dispute here.  *See, e.g.*, *Long v. Amway Corp.*, 306 F. Supp. 3d 601, 610 (S.D.N.Y. 2018) (recognizing that "any dispute" and "any remaining claim or dispute" is "classically broad language); *Mehler*, 205 F.3d at 49 (holding that "any controversy or claim between [the parties] arising out of or relating to the Agreement" was "classically broad" language (quotations omitted)).  Dixon brings statutory and common law claims for Wells Fargo allegedly fraudulently closing his accounts.  Complaint ¶¶ 19-41.  Those

8

issues are "dispute[s]" and "disagreement[s]" that "relat[e] . . . to [his] accounts," and therefore fall within the arbitration agreement.  Consumer Account Agreement at 4.

Dixon resists this plain construction by seemingly arguing that the arbitration agreement does not cover "fraud and clos[ing] an account."  Opposition at 7.  But the Consumer Account Agreement includes no carve-out for claims involving fraud.  Nor does the agreement include a carve-out for claims involving closing an account.  It says that the parties agree to arbitration for any claim relating in any way to an account.  And so like the many courts to address whether to compel arbitration for similar Wells Fargo arbitration agreements, this Court recognizes that the Consumer Account Agreement "encompasses a broad scope of arbitrable issues" and compels arbitration for all the claims.  *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 556 (D. Md. 2019) (quotations omitted).[2]

Lastly, the Court must decide whether to stay the case pending arbitration or dismiss the entire action.  "[W]hen all of the claims in an action have been referred to arbitration and a stay requested," the FAA "mandate[s] a stay of proceedings."  *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015), *cert. denied*, 577 U.S. 1031 (2015).  Because the Court has referred all claims to arbitration and Wells Fargo requests a stay pending arbitration, the Court stays the case pending arbitration.

---

[2] *Accord, e.g.*, *Cornelius*, 2020 WL 1809324, at *5; *Jeffries v. Wells Fargo & Co.*, No. 16 Civ. 1987 (LSC), 2017 WL 3149513, at *3 (N.D. Ala. July 25, 2017); *McSweeney v. Fargo*, No. 15 Civ. 494, 2016 WL 525855, at *4 (E.D. Tex. Feb. 10, 2016), *report and recommendation adopted sub nom. McSweeney v. Wells Fargo, N.A.*, No. 15 Civ. 494, 2016 WL 899911, at *1 (E.D. Tex. Mar. 9, 2016); *Jabbari v. Wells Fargo & Co.*, No. 15 Civ. 2159 (VC), 2015 WL 13699809, at *1 (N.D. Cal. Sept. 23, 2015); *Colon v. Wells Fargo Bank, N.A.*, No. 14 Civ. 346 (ODE), 2014 WL 12360936, at *2 (N.D. Ga. Sept. 16, 2014).

### IV. Conclusion

For these reasons, the Court grants Wells Fargo's motion to compel, stays all claims against Wells Fargo pending arbitration, and denies without prejudice Wells Fargo's motion to dismiss as moot. The parties are directed to submit quarterly joint letters informing the Court of the status of the arbitration proceeding with the first letter due by January 14, 2022 and subsequent letters every three months thereafter. The Clerk of the Court is respectfully directed to terminate the motion pending at Docket Number 21.

SO ORDERED.

Dated: October 14, 2021
      New York, New York                    JOHN P. CRONAN
                                          United States District Judge